IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DARRYL S.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 22 C 3827 |
| v. ) | |
| ) | **Magistrate Judge** |
| **KILOLO KIJAKAZI, Acting** ) | **Maria Valdez** |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Darryl S.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 10] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 12] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

## BACKGROUND

### I. PROCEDURAL HISTORY

On June 15, 2020, Plaintiff filed claims for DIB and SSI, alleging disability since June 15, 2019. The claims were denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on July 7, 2021, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On November 9, 2021, the ALJ denied Plaintiff's claims for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claims were analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had engaged in substantial gainful activity from July 2019 to February 2020, but also found that there had been a continuous twelve-month period during which Plaintiff did not engage in substantial gainful activity. At step two, the ALJ concluded that Plaintiff had the following severe impairments: bipolar disorder; alcohol use disorder; and

2

polysubstance use disorder. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: can have no contact with the public for work purposes and no more than occasional contact with coworkers and supervisors for work purposes; cannot engage in teamwork situations where he has to work with others to complete the same job tasks, but can work independently, performing the same tasks day in and day out; and cannot perform work where a machine sets the pace of work. At step four, the ALJ concluded that, within the relevant time period, Plaintiff would be unable to perform his past relevant work as a waiter or line cook. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he has not been under a disability from June 15, 2019 through the date of the decision.

## DISCUSSION

### I.   ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

3

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial

4

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to

5

a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ improperly relied on the opinions of the State agency consultants because they did not review all of Plaintiff's mental health treatment records, and the ALJ impermissibly crafted the RFC based on her own lay interpretation of the evidence; and (2) the ALJ did not draw a logical bridge from the medical evidence to the RFC and mischaracterized Plaintiff's mental health

6

symptoms and activities of daily living. Each argument will be addressed below in turn.

### A. The ALJ's Assessment of the Medical Opinions and Interpretation of the Evidence

Pertinent to Plaintiff's first argument, the medical opinions in the record were rendered by State agency psychological consultants Dr. Russell Taylor and Dr. Jeanne Yakin. The ALJ found the consultants' opinions to be persuasive, noting that they "opined that the claimant's mental impairments resulted in a moderate limitation [with] interacting with others and adapting or managing himself and a mild limitation in the remaining paragraph B criteria." (R. 181.) The ALJ further noted the consultants' opinions that Plaintiff "could perform multi-step tasks in a work setting with reduced social demands in a predictable, routine work setting." (*Id.*) In advancing his first argument, Plaintiff contends that because the "consultants' opinions were not based on the full record" the "ALJ was not permitted to rely upon them in determining Plaintiff's RFC." (Pl.'s Memo. at 8.)

Generally, an ALJ is entitled to rely on the opinions of state agency consultants "given that they are experts in Social Security disability evaluation." *Rodolfo M. v. Kijakazi*, No. 21 C 5565, 2023 WL 264913, at *7 (N.D. Ill. Jan. 18, 2023). Furthermore, this Court has recognized that "[i]t is common for there to be a lag between the state agency physicians' reviews and the ALJ's decision, so the fact that new medical records came in after the state agency physicians conducted their reviews, is not, by itself, problematic." *Sheila M. v. Saul*, No. 20 C 664, 2021 WL 1784775, at *6 (N.D. Ill. May 5, 2021) (citation omitted). As Plaintiff concedes, an

7

ALJ must only "seek an additional medical opinion if there is *potentially decisive evidence* that postdates the state agency consultant's opinion." (Pl.'s Memo. at 13 (emphasis added).) The pertinent question is whether the new information "changed the picture" to an extent that the ALJ erred by continuing to rely on a medical opinion not based on the entirety of the record. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *see also Massaglia v. Saul*, 805 F. App'x 406, 410 (7th Cir. 2020) ("An ALJ may rely on a reviewing physician's assessment unless later evidence containing new, significant medical diagnoses 'changed the picture so much' that it reasonably could have changed the reviewing physician's opinion.") (citation omitted).

In this case, the Court finds that the evidence upon which Plaintiff relies did not "change the picture" to a degree that required an updated medical opinion or rendered the State agency consultants' opinions stale. As for the additional evidence, Plaintiff asserts that he was diagnosed with HIV in November 2020 and "neither consultant reviewed any mental health records following Plaintiff's HIV diagnosis." (Pl.'s Memo. at 8.) According to Plaintiff, his "mental health deteriorated" after the HIV diagnosis and the ALJ "erred by failing to obtain an updated medical source opinion to evaluate Plaintiff's mental health condition after the [HIV] diagnosis." (Pl.'s Memo. at 8-9.) As an initial matter, as Defendant points out, Plaintiff's HIV diagnosis was in fact "discussed in Dr. Yakin's February 2021 evaluation." (Def.'s Memo. at 3.) Plaintiff has not attempted to rebut that point in his reply brief. Furthermore, Plaintiff relies on the fact that he felt depressed after

learning of his HIV diagnosis and had difficulty with focus and experienced manic episodes. However, as Defendant correctly asserts, such evidence is essentially not new because "both Drs. Taylor and Yakin significantly detailed manic episodes, depression, and difficulties with focus." (*Id.* at 4.) Again, Plaintiff has not attempted to rebut that point in his reply brief. Under the circumstances, the Court agrees with Defendant that Plaintiff "cannot show how his HIV diagnosis caused mental impairments that went unappreciated by Dr. Yakin's evaluation." (*Id.* at 3.)

Related to his argument concerning the allegedly outdated nature of the State agency consultants' opinions, Plaintiff contends that the ALJ "interpreted Plaintiff's mental health records herself" and therefore impermissibly "played doctor." (Pl.'s Memo. at 12.) However, the ALJ was empowered to consider the additional medical records because the job of assessing a claimant's work-related abilities lies solely with the ALJ, not a medical expert. *See Thomas v. Colvin*, 745 F. 3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is matter for the ALJ alone – not a treating or examining doctor – to decide.") (citation omitted). The Court finds that the ALJ in this case was not impermissibly "playing doctor" when she evaluated the additional medical records. *See Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 886-87 (N.D. Ill. 2003) ("Our review of the record indicates that the ALJ was not 'playing doctor,' but performing his duty to consider and weigh the evidence."); *Morrow v. Berryhill*, No. 16 C 8430, 2017 U.S. Dist. LEXIS 152743, at *7 (N.D. Ill. Sep. 20, 2017) ("Plaintiff further contends that the ALJ erred by failing to obtain a medical opinion from a doctor who had reviewed the entire record. This

9

was necessary, plaintiff says, because she submitted additional medical evidence, including two treating source opinions, after the agency reviewers opined on her condition. However, the ALJ was able to and did consider the additional medical evidence in making his determination. . . Thus, the ALJ was not required to have a doctor opine on the conflicting medical evidence, and he was not 'playing doctor' when he weighed it himself.") (citations omitted).

### B. The ALJ's Consideration of Plaintiff's Daily Activities

Plaintiff's second argument boils down to his assertions that the ALJ improperly "focused on Plaintiff's activities of daily living to discredit his mental health symptoms" and "improperly equated Plaintiff's ability to perform certain activities of daily living with an ability to work full time" (Pl.'s Memo. at 15.) With respect to Plaintiff's daily activities, the ALJ noted that Plaintiff is "able to shop, run errands, attend appointments, go to the laundromat, go to church, go to the dispensary for marijuana, and eat out." (R. 176.) The ALJ further noted that Plaintiff has been able to "work six days per week, for the three months prior to the hearing, and attend online classes to finish his college education." (R. 176.) Additionally, the ALJ noted that Plaintiff "can manage finances, tend to personal care, do chores, cook, shop, do dishes, do the laundry, make the bed, take out the garbage, drive and live alone." (R. 177.)

The Court finds that, in assessing Plaintiff's daily activities, the ALJ did not improperly equate those activities with an ability to work full time. Rather, the ALJ appropriately read into Plaintiff's extensive activities that he was not as restricted

10

as alleged. It was reasonable for the ALJ to determine that Plaintiff's daily activities tend to show that Plaintiff "functions at a higher degree than [he] alleges." (R. 179.) Accordingly, Plaintiff's second argument is unavailing.

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion for summary judgment [Doc. No. 10] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 12] is granted.

**SO ORDERED.**          **ENTERED:**

*[signature: Maria Valdez]*

**DATE:**    April 28, 2023          _____
                                                   **HON. MARIA VALDEZ**
                                                   **United States Magistrate Judge**